IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
(HOUSTON DIVISION)

| | | |
|---|---|---|
| GAYATHRI MURTHY, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:11-cv-00105-KPE |
| | § | |
| ABBOTT LABORATORIES, | § | |
|     Defendant. | § | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
RESPONSE TO MOTION TO DISMISS**

For the following reasons, Abbott's dilatory motion should be denied.

**Introduction**

Despite the fact that Abbott appears to have lost every "single motion to dismiss plaintiff's complaint" that they have filed, filing such a motion in response to a Humira-related claim appears to be the new, *de rigeur* litigation strategy of Abbott, irrespective of the content or thoroughness of the complaint.[1] *See e.g., Mohr v. Targeted Genetics, Inc.*, 690 F.Supp.2d 711 (C.D. Illinois 2007);[2] *Wendell v.*

---

[1] The undersigned has been representing families in claims against pharmaceutical companies for 15 years. This is the first case in memory in which he has been accused of failing to plead *enough* facts. Pfizer complained once that counsel's typically "chapter and verse" complaints alleged *too many* facts. But this is a first. This Court, has, of course, seen many, many pleadings alleging products liability claims against pharmaceutical companies and can judge these, as *Twombly* requires, with its own experience and common sense.

[2] Although it is not apparent from the case names, both cases involved Abbott and Humira. *Mohr* was a Humira/histoplasmosis case. Abbott was a defendant. The district court rejected both (a) the *Twombly/Izbal* basis for dismissal, and (b) the

*Johnson & Johnson*, 2010 WL 2465456 (N.D.Calif. June 14, 2010). Undoubtedly

---

alternative "learned intermediary" argument and remanded the case to state court.. *Wendell* is even more *a propos*, as it involved allegations of Humira-induced lymphoma. The court there rejected a *Twombly/Izbal* based motion to dismiss that focused on (a) the adequacy of the Humira label to warn against lymphoma, (b) failure to warn, and (c) causation.

Together these two cases pretty much cover the waterfront of the bases of Abbott's motion in the case at bar. It is, therefore, more than a wee bit troubling – given the fact that all three of the Kirkland & Ellis lawyers in this case appeared in one or both of those opinions – that Abbott did not bother to cite either opinion to the Court. It would seem that the duty of "candor with the Court" would, at minimum, require a citation.

There is a third pending case that involves allegations of Humira-induced lymphoma. *Jones v. Abbott Laboratories*, Case No. 2:07-cv-02120-BBD (W.D.Tenn). It was filed in early 2007, before *Twombly* was decided. Abbott's only Motion to Dismiss in that case was one that challenged the right of Ms. Jones' children to substitute in as plaintiffs once their mother died. Doc. 22-1 (filed 12/21/07). It did not make the same kind of substantive challenges that are contained in the motions in the two cited cases and in the case at bar.

this strategy is the product of a tortured exaggeration of the word "plausible" in *Twombley*[3] and *Izbal*.[4]

In any event, in this case, as in *Mohr* and *Wendell*, Abbott's motion should be denied.

## Legal Standard: The "Short Plain - Plausible" Pleading

The legal standards for ruling on a Motion to Dismiss under Rule 12(b)(6) are well known to this Court:

> A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to

---

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In this 7:2 opinion, the Court sustained the trial judge's dismissal of an antitrust conspiracy complaint that rested on averments of "parallel" conduct rather than objective allegations of unlawful conduct. It did so largely because of the enormous waste of time and resources involved in conducting discovery on a case that did not have a "hope" of success in the long run. Hardly an earthshaker. There is, however, considerable irony in the fact that an opinion which consigned the "no set of facts" language of *Conley v. Gibson,* 355 U.S. 41 (1957) to "retirement" because it had been "puzzling the profession for 50 years", 550 U.S. at 563, has now precipitated more citations than almost any case in the last hundred years, with the possible exceptions of *Erie* and *Daubert*.

[4] *Ashcroft v. Iqbal*, 556 U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). This 5:4 opinion held that the facts alleged did not suffice to show a purposeful discrimination by government agents. Significantly, however, the High Court remanded to the Second Circuit to decide whether the plaintiff should be given an opportunity to cure with a Rule 15 amendment, and the Second Circuit then sent it back to the district judge to make that determination. 574 f.3d 820 (2nd Cir. 2009).

be true 'raise a right to relief above the speculative level.' " *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir.2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S.Ct. at 1950 (citation omitted). The court should not " 'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir.2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir.2004)). A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 499 (5th Cir.2000). Furthermore, a Court may refer to matters of public record when deciding a motion to dismiss. *Chauhan v. Formosa Plastics Corp.,* 212 F.3d 595, 595

> (5th Cir.2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir.2004). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted ." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009) (citation omitted); *Duke Energy Intern., L.L.C v. Napoli*, Case No. H–09–2408, ––– F.Supp.2d ––––, 2010 WL 3749298 (S.D. Tex. Sept.21, 2010).

*Hickerson v. Valued Life Org., Inc.*, 4:10-CV-4809, 2011 WL 1100921 (S.D. Tex. Mar. 22, 2011).[5] We proceed to analyze Abbott's arguments with these standards in mind.

### **Argument and Authorities**

At the inception, it should be noted that the *rationale* of *Twombly/Izbal* is not present in this case. The Supreme Court was quite clear in its opinions that the major rationale of its "plausibility" standard was to avoid the protracted proceedings, annoyance, and associated costs for a case that had almost no hope for success:

---

[5] We apologize for the lengthy quotation from this opinion. However, because it is so recent and because it synopsizes the current state of the law in this Circuit regarding motions to dismiss in the wake of *Izbal* and *Twombly*, it seemed to be the most effective use of the time and space. The courts have, indeed, been inundated with 12(b)(6) motions in the wake of the twin decisions which at least one appellate blogger has branded as *TwIzbal*. Jay O'Keefe, *Fourth Circuit Clarifies Twiqbal: Plaintiffs Despair,* Virginia App.L. Blog (Dec. 7, 2009), http://www.virginiaappellatelaw.com. A Westlaw search shows that this Court alone has 70 reported opinions citing these cases, and a recent CLE paper by V&E lawyers indicates that each of these opinions have been cited "over 81,000 times."

> As we indicated over 20 years ago . . . "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." . . . ("[T]he costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint"

*Twombly, supra*, 550 U.S. at 558 (citations omitted). *Accord Izbal*, 129 S.Ct. At 1953-54.

Those considerations do not apply, where, as here, numerous plaintiffs, represented by several different law firms have filed several lawsuits in state and federal courts across the country to seek redress from Humira-induced injuries. The *Wendell* case, cited above, and the case of *Jones v. Abbott*, Case No. 2:07-cv-02120-BBD (W.D.Tenn) currently pending before Judge Bernice Donald in the United States District Court in Memphis, both involve allegations of Humira-induced lymphoma. The undersigned counsel represent the plaintiffs in *Jones*. Abbott has produced approximately 1,000,000 pages of documents, three 30(b)(6) depositions are scheduled to take place over the course of the next 60 days, and the case is presently set for trial in January 2012. Moreover, the prescribing physician in *Jones*, like Dr. Popovich in this case, was hired by Abbott to participate in its HERO clinical trial program for Humira. *See* Complaint. Thus, dismissal of this Amended Complaint would not spare Abbott the costs of defending this $6.5 billion/year drug.

Abbott seeks dismissal of three theories. We will address them *seriatim*. But prior to doing so, it is important to note that, although Abbott concludes its 22-page brief with a prayer that the Court dismiss the Amended Complaint "in its entirety," it fails to address three key causes of action. First, Abbott's motion does not address the breach of warranty allegation in paragraph 33 of the Amended Complaint. In light of the fact that this paragraph even provides the Court and defense counsel with a citation to the section of the Texas Pattern Jury Charges that shows how such claims are submitted to a Jury, *i.e.,* Tex. PJC § 71.3, this allegation is certainly "plausible" within the meaning of *Twombly/Izbal*.

Similarly, Abbott ignores the misrepresentation allegations of paragraph 34, including the very specific allegation that Dr. Popovich, acting as Abbott's clinical investigator and agent, represented to Ms. Murthy that Humira was "as safe as aspirin." The Texas Supreme Court held long ago, in *Crocker v. Winthrop*, 514 S.W.2d 429 (Tex. 1974) that this was a viable theory of recovery even in those circumstances in which a failure to warn claim was not maintainable because the pharmaceutical company did not know, and could not have known, that their drug was addictive. The *Crocker* opinion was cited in footnote 15 of the *Centocor* case, *infra*, discussed *infra*, which Abbott does cite. Therefore, Abbott's failure to address this theory of recovery and this case authority on point is mystifying.

Finally, with the exception of a negligent failure to warn, Abbott does not address the general negligence allegations in paragraph 35. These allegations are focused, *inter alia*, on Abbott's testing of Humira and its negligent handling of adverse events. Abbott is scheduled to present 30(b)(6) witnesses on these very matters in the *Jones* case, cited *supra*, on June 8th and July 8th in Kirkland & Ellis's offices in Chicago. Abbott is, thus, well aware of the legal theories and their factual bases.

### I. § 82.007 DOES NOT WARRANT DISMISSAL.

Abbott begins with an argument that Texas substantive law governs this case. For purposes of this Motion only, we will assume arguendo, that is the case. Section 82.007 of the Texas Civil Practices and Remedies Code is a procedural statute. It creates a *rebuttable* statutory presumption that a drug manufacturer is not liable for giving warnings or instructions that are pre-approved by the FDA. As the court held in *Ackermann v. Wyeth Pharmaceuticals*, 471 F. Supp. 2d 739, 749 (E.D. Tex. 2006) aff'd, 526 F.3d 203 (5th Cir. 2008), "once evidence contradicting the presumption has been offered, the presumption disappears and is not weighed or treated as evidence."

**A.** **§ 82.007(a) Does Not Apply to this Case.** There are almost no cases that really construe and interpret this statute. However, by its terms, § 82.007 does not apply to an "indication not approved" by the FDA. Therefore, it is highly

questionable whether it applies at all to patients enrolled in any kind of clinical trial. *See* ¶ 13 of Amended Complaint.

Additionally, there are very plausible allegations that not *all* of the information given to Ms. Murthy was FDA approved. For example, here, as in the *Centocor* case, the patient was given a videotape produced by the drug company. *Id.* at ¶ 20-21. Here is what the Texas Court of Appeals had to say about the potential applicability of § 82.007 to such a videotape: "Moreover, it is not clear that this statute was intended to cover something other than a package insert, which accompanies a prescription drug 'in its distribution,' and there was no evidence presented at trial that the video shown to Patricia was ever approved by the FDA." *Centocor, Inc. v. Hamilton,* 310 S.W.3d 476, 522 (Tex. App. 2010).

The Amended Complaint alleges that this video was not preapproved by the FDA. ¶ 20-21. Similarly, the *Consent to Participate* document evidencing Ms. Murthy's participation in the clinical trial was alleged not to be FDA approved. ¶ 13. Moreover, as noted in the Amended Complaint, the oral information given by Dr. Popovich, including the representation that Humira was as safe "as aspirin" was clearly not FDA approved. ¶¶ 15, 34.

Finally, there are no cases construing the effect of a subsequent FDA mandated warning on the § 82.007 presumption. The statute does provide that one of the ways that the presumption can be rebutted is via showing a subsequent FDA action

requiring removal of the drug from the market. § 82.007(b)(2). At the time of the passage of this statute, this "nuclear option" was the only legal avenue available to the FDA to police the pharmaceutical industry. But, if the list of ways to rebut the statutory presumption is meant to be non-exclusive, as it seems to be, then obviously FDA actions that are less than total removal from the market could also be used to rebut the presumption. This would include the subsequent FDA-mandated warnings directly to the patients, as set forth in ¶ 22.

The single case cited by Abbott, *Lofton v. McNeil Consumer & Specialty Pharmaceuticals*, 682 F. Supp. 2d 662, 675 (N.D. Tex. 2010) does not support a claim for dismissal. It is true that, after ample discovery, summary judgment was granted there based on § 82.007, based on the fact that "there is no genuine issue of material fact whether Defendants' Motrin label in 2000 was adequate." It would be error to rely on *Lofton* for dismissal at the inception of a case.

**B.     If § 82.007(b) Is Preempted, So, Too, Is § 82.007(a).** Although this legal issue is lurking in the case, the Court need not grapple with it extensively at this juncture to deny the motion to dismiss. However, in a nutshell, here is the issue.

Because § 82.007 is a defensive statutory presumption, there is no requirement for a plaintiff to anticipate and negate it in her Complaint. However, once the evidence is developed during discovery, Murthy expects that, in addition to the foregoing arguments, she will be able to show that Abbott has withheld evidence

from the FDA, within the ambit of § 82.007(b)(1), which is yet another way to rebut the statutory presumption.

Drug companies usually argue that subsection (b)(1) is preempted by *Buckman* and its progeny. That will be a harder row to hoe now, (in light of *Wyeth v. Levine*, 555 U.S. 555 (2009), but IF Abbott goes down that path, the response is that, IF (b)(1) is preempted, then so, too, is subsection (a), which creates the presumption in the first place. The inability to use the first-listed category of evidence to rebut the presumption necessarily expands the coverage of the presumption and thus, the scope of the immunity that the Texas legislature prescribed. In this circumstance, the exception is not severable from the rule, and section 82.007 is constitutionally invalid in its entirety.[6]

As the Court noted in *Anderson v. Wood*, 137 Tex. 201, 152 S.W.2d 1084, 1087 (1941). Thus, "[w]hen part of a statute is unconstitutional, we sustain the remainder only if the result is consistent with the original legislative intent."

---

[6] There is no specific severability clause in the legislation enacting section 82.007. But section 23.03 of the legislation containing Section 82.007(b) does set forth a standard by which to evaluate severability: a provision of the legislation is severable only if "[t]he invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application . . ."

## II. THE COMMON LAW "LEARNED INTERMEDIARY" AFFIRMATIVE DEFENSE DOES NOT WARRANT DISMISSAL OF A COMPLAINT.

> But it may be that having written, what we write is soon erased. This is not the last word, only the latest. And before the slug drops in a St. Paul linotype, the first writing Texas court may melt down the lead to so much dross. Such are the perils of diversity jurisdiction.

*Ford Motor Co. v. Mathis*, 322 F.2d 267, 269 (5th Cir. 1963). In this typically colorful passage, Chief Judge Brown (the ultimate judicial statesman of the Fifth Circuit) cautioned his federal court colleagues about their expositions of Texas law. His words of caution still have vitality. Indeed, in today's environment, and particularly with regard to this legal theory of defense, they have very forceful vitality.

We begin with these observations about federalism and judicial statemanship because the last "writing Texas court" for present purposes is the Texas Court of Appeals' opinion in *Centocor, Inc. v. Hamilton,* 310 S.W.3d 476, 522 (Tex. App. 2010). Abbott brands this opinion as being of "questionable authority" because an appeal is pending. But, regardless of what the Texas Supreme Court does or does not do with it, it is the current law. And *very* on point. The drug involved in that case is a biologic agent called "Remicade." It is one of the two major competitors of Abbott's Humira, at issue in this case. There, as here, the information which was provided to the patient was not all from the physician himself. Rather, there, as here,

-12-

the patient was given a video which was produced by the pharmaceutical company specifically to inform the patient about the drug. A drug company that chooses to circumvent the "intermediary" physician via such materials must have a correlative duty under the law to warn the patient.

As other recent writing courts have done[7] the *Centocor* court began its opinion with pithy observations about the differences between the real 21st Century world of direct-to-consumer advertising and the Marcus Welby era from whence the learned intermediary doctrine sprang in the first place:

> Our medical-legal jurisprudence is based on images of health care that no longer exist. At an earlier time, medical advice was received in the doctor's office from a physician who most likely made house calls if needed. The patient usually paid a small sum of money to the doctor. Neighborhood pharmacists compounded prescribed medicines. Without being pejorative, it is safe to say that

---

[7] In addition to the *Perez* opinion from New Jersey, quoted by the *Centocor* court, which recognized a "mass media promotion" *exception* to the learned intermediary doctrine, the landmark case in this century is *State ex. rel. Johnson & Johnson Corp. v. Karl*, 647 S.E.2d 899, 905 (2007) which rejected the doctrine in its entirety as being "outdated and unpersuasive." In FN 14 of its Brief, Abbott claims that the doctrine "has been viewed favorably in 48 out of 49 states." But the *Karl* court did some quite different math, noting that "the highest courts of the remaining twenty-two states, . . . have not adopted the learned intermediary doctrine.").

Abbott's head count of states also obviously ignores New Mexico, where Judge Browning cited *Karl*, accepted its rationale, noted the incompatibility between this doctrine and strict tort liability, and predicted that the New Mexico Supreme Court would likewise reject it. *Rimbert v. Eli Lilly & Co.*, 577 F.Supp.2d 1174 (D.N.M. 2008), appeal pending. *See also Griffith v. Blatt*, 51 P.3d 1256 (Or. 2002)(rejecting doctrine for strict liability cases).

> the prevailing attitude of law and medicine was that the "doctor knows best."
>
> * * *
>
> For good or ill, that has all changed. Medical services are in large measure provided by managed care organizations. Medicines are purchased in the pharmacy department of supermarkets and often paid for by third-party providers. Drug manufacturers now directly advertise products to consumers on the radio, television, the Internet, billboards on public transportation, and in magazines.

*Centocor, Inc. v. Hamilton*, 310 S.W.3d 476, 480 (Tex. App. 2010), quoting *Perez v. Wyeth Labs.*, 161 N.J. 1, 734 A.2d 1245, 1246–47 (1999).

*Izbal* requires motions to dismiss to be determined from a "context specific" frame of reference. It is certainly true that some pharmaceutical cases have been lost by plaintiffs based on the learned intermediary doctrine. However, they have been lost on summary judgments, not dismissals. And some of those summary judgments have been reversed. *See e.g., McNeil v. Wyeth,* 462 F.3d 364 (5th Cir. 2006).

Also, this case presents a unique set of facts, and a related legal issue, that, to the best of counsel's knowledge and belief, is not addressed in any legal opinion[8]. It is the question of whether a physician who is paid by a drug company to prescribe

---

[8] Ironically, legal research did unearth an Abbott case. *Bencomo v. Guidant Corp.*, CIV. A. 06-2473, 2008 WL 3364960 (E.D. La. Aug. 8, 2008). In that case, Abbott argued that the prescribing physician was "learned" *because* he participated in one of their clinical trials. Unfortunately, the plaintiff did not snap to the fact that being paid by Abbott renders him Abbott's agent.

a medication to a patient can possibly be an independent, objective "learned intermediary" within the meaning of the doctrine.

Although it has not filed an Answer, Abbott's Memorandum acknowledges that Ms. Murthy was a patient in the HERO clinical study and that Dr. Popovich was her physician. It ignores the allegation in ¶ 11 that he was a "paid clinical investigator" and, ergo, "not an independent 'learned intermediary.'" Through discovery in the *Jones* case discussed herein, we now have the documents to prove the nature and extent of Abbott's financial arrangements with its clinical investigators in the HERO study. However, Abbott's confidentiality designation precludes us from quoting from these documents in this response, or from filing them publicly.

Whether Dr. Popovich is deemed to be Abbott's formal "agent" as the Amended Complaint repeatedly alleges, ¶¶ 12, 13, 15, 18, 19, 34, or not, the long and short of it is that he was being paid by Abbott to give Humira to Ms. Murthy. That fact, in conjunction with *Centocor*, *ipso facto*, precludes Abbott's reliance on the learned intermediary doctrine.

The bottom line at the present stage, however, is that dismissal is inappropriate. Although the well-pleaded facts of the Amended Complaint do not have to anticipate and negate an affirmative defense like the learned intermediary doctrine, the facts set forth herein show plenty of reasons why it would be inapplicable in this case. Accordingly, Abbott's motion should be dismissed.

**III.   MURTHY'S BREACH OF CONTRACT CLAIM IS NOT TIME BARRED.**

In a "gotcha" argument, Abbott, which litigated this case against Ms. Murthy for several years in a federal court in Massachusetts and stipulated to a dismissal, claims that, even though Gayathri Murthy participated in a clinical study for Abbott under the terms of a contract that obligated them to pay all of her future medical bills relating to that treatment, because this refiling of that suit was not made within four years of her diagnosis with lymphoma, it is time barred.

There are three problems with Abbott's argument. First, her cause of action did not necessarily accrue for limitations purposes when she was diagnosed with cancer. The mere diagnosis did not put her on notice that Humira probably caused her lymphoma. Nor, as the Amended Complaint alleges at some length, was Abbott doing anything to tell her that Humira was a likely culprit. It did not do so until 2009 when the FDA finally made it do so. ¶ 22. Therefore, limitations could not possibly begin to run on the contract claims until that point in time.

Second, the allegations in this suit, like those in the Massachusetts lawsuit, clearly relate to claims for personal injuries as a result of Ms. Murthy's Humira-induced lymphoma. The fact that an additional cause of action was asserted in the refiling in Texas does not mean that this claim was "wholly based on a new, distinct,

or different transaction or occurrence" within the meaning of § 16.068, TEX. CIV. PRACT. & REM. CODE. Consequently, they "relate back."

Third, as noted in FN1 on page 3 of the Amended Complaint, limitations would also be tolled by Abbott's fraudulent concealment of the risks of Humira-induced lymphoma. Taken together, it would be improper to dismiss this suit at this stage.

## Conclusion

"Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009), cited by this Court in *Hickerson v. Valued Life Org., Inc.*, 4:10-CV-4809, 2011 WL 1100921 (S.D. Tex. Mar. 22, 2011). For the foregoing reasons, Abbott's Motion to Dismiss should be denied.

Respectfully submitted,

VICKERY, WALDNER & MALLIA, LLP

*/s/ Arnold Anderson (Andy) Vickery*
Arnold Anderson (Andy) Vickery
Texas Bar No. 20571800
Fred H. Shepherd
Texas Bar No. 24033056
One Riverway, Suite 1150
Houston, TX 77056-1920
Telephone: 713-526-1100
Facsimile: 713-523-5939
Email: andy@justiceseekers.com
Email: fred@justiceseekers.com

<u>Certificate of Service</u>

I certify that on this 12th day of May, 2011, Plaintiff's Memorandum in Support of Response to Motion to Dismiss has been electronically filed with the Clerk using the CM/ECF system, which will automatically send email notifications of such filing to the following attorneys of record:

> John Donley, Esq.
> Renee D Smith, Esq.
> Andrew Bautista, Esq.
> KIRKLAND & ELLIS, LLP
> 300 North LaSalle Street
> Chicago IL  60654

*/s/ Arnold Anderson (Andy) Vickery*
Arnold Anderson (Andy) Vickery